## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re Application of | : | |
| | : | |
| ALPINE PARTNERS (BVI), L.P. and | : | C.A. No. _____ |
| FOUR WORLD EVENT OPPORTUNITIES, LP, | : | |
| | : | |
| Petitioners, for an Order Pursuant to | : | |
| 28 U.S.C. § 1782 to Conduct Discovery | : | |
| for Use in a Foreign Proceeding. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR
## AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

OF COUNSEL:
Duane L. Loft
Shireen A. Barday
John McAdams
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
(212) 970-2300
duane.loft@pallasllp.com
shireen.barday@pallasllp.com
john.mcadams@pallasllp.com

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Jamie L. Brown (# 5551)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
jbrown@hegh.law
*Counsel for Petitioners*

Dated:  November 2, 2023

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ................................................................................................ 3

    A.    Parties to the Appraisal Proceeding and the Merger. ............................................ 3

    B.    The Appraisal Proceeding. ................................................................................... 7

    C.    Respondents and the Discovery Sought.............................................................. 7

ARGUMENT ..................................................................................................................... 9

I.     The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782. ......... 10

    A.    Respondents "Reside" or Are "Found in" This District...................................... 10

    B.    The Discovery Sought Is "For Use" in the Appraisal Proceeding. ...................... 11

    C.    Petitioners Are "Interested Persons." .................................................................. 12

II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery. .......................... 12

    A.    Respondents Are Non-Participants in the Appraisal Proceeding.......................... 12

    B.    The Cayman Court Will Be Receptive to the Evidence Sought. .......................... 13

    C.    Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions. ......... 14

    D.    The Subpoena Is Not Unduly Burdensome. ........................................................ 15

CONCLUSION.................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) .................................................................... 11

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................... 12

*In re Application of Athos Asia Event Driven Master Fund*,
    No. 1:21-MC-00208-GBF (S.D.N.Y. Mar. 3, 2021) ................................. 14

*In re Application of Athos Asia Event Driver Master Fund*,
    2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) .......................................... 14

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) .......................................................... 2, 10, 11, 15

*In re Biomet Orthopaedics Switzerland GmbH*,
    742 F. App'x 690 (3d Cir. 2018) .............................................................. 17

*In re del Valle Ruiz*,
    342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019) ............ 10

*In re Dickson*,
    2020 WL 550271 (S.D.N.Y. Feb. 4, 2020) .............................................. 14

*In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782*,
    2021 WL 1063390 (D. Del. Mar. 19, 2021) ....................................... 11, 13

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) .................................................................... 17

*In re EWE Gasspeicher GmbH*,
    2020 WL 1272612 ....................................................................................... 9

*In re FourWorld Event Opportunities, LP*,
    No. 21-mc-00283-RGS (D. Del. July 29, 2021) ...................................... 14

*In re Application of Gilead Pharmasset LLC*,
    2015 WL 1903957 (D. Del. Apr. 14, 2015) ..................................... 10, 13, 16

*In re Hopkins*,
    2020 WL 733182 (N.D. Cal. Feb. 13, 2020) ............................................ 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................................................... *passim*

*In re Kuwait Ports Auth.*,
    2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ........................................................ 14

*In re Liverpool Ltd. P'ship*,
    2021 WL 3793901 (D. Del. Aug. 26, 2021) ..................................................... 10, 11

*Lyxor Asset Mgmt. S.A. v. Phoenix Meridian Equity Ltd.*,
    2009 CILR 553 (Sept. 24, 2009) ........................................................................... 14

*Matter of HES (Caribbean) Int'l Holdings, S.R.L.*,
    2020 WL 728892 (D.N.J. Feb. 13, 2020) .............................................................. 16

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ................................................................................. 12

*In re O'Keeffe*,
    2015 WL 540238 (D.N.J. Feb. 10, 2015), *aff'd*, 2015 WL 5039723 (D.N.J. Aug. 26, 2015),
    *aff'd*, 646 Fed. Appx. 263 (3d Cir. 2016) ................................................. 13, 15, 16

*In re Penner*,
    2017 WL 5632658 (D. Mass. Nov. 22, 2017) ....................................................... 14

*In re Platinum Partners Value Arbitrage Fund L.P.*,
    582 B.R. 803 (Bankr. S.D.N.Y. 2018) .................................................................. 14

*Re Qunar Cayman Islands Ltd.*,
    2018 (1) CILR 199 ............................................................................................... 13

*In re Request from Cayman Islands*,
    No. 22-mc-00536-RGA (D. Del. Jan. 12, 2023) ................................................... 16

*In re Ex Parte Application of Sandoz Canada, Inc.*,
    2020 WL 5642189 (D.N.J. Sept. 22, 2020) .......................................................... 16

*In re Third Eye Cap. Corp.*,
    2022 WL 714758 (D.N.J. Mar. 10, 2022) ............................................................. 16

**STATUTES**

28 U.S.C. § 1782 ............................................................................................. *passim*

Alpine Partners (BVI), L.P. and FourWorld Event Opportunities, LP, (together, the "**Petitioners**"), respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from Platinum Equity, LLC ("**Platinum**"); Solenis LLC ("**Solenis**"); BCPE Diamond Investor, LP (the "**Bain Shareholder**"); Bain Capital Private Equity, LP; Centerview Partners LLC ("**Centerview**"); J.P. Morgan Securities LLC ("**J.P. Morgan**"); and Evercore Group LLC ("**Evercore**") (together "**Respondents**"), entities found in this District for use in connection with the appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") described more fully below (the "**Appraisal Proceeding**").   In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shares in Diversey Holdings, Ltd. ("**Diversey**" or the "**Company**"), a Cayman Islands company that was delisted from the NASDAQ and became a privately held company on July 5, 2023.  Petitioners' shares were forcibly canceled through a merger (the "**Merger**") for a price far below the fair value calculated by the Special Committee's financial advisor and without routine minority shareholder safeguards, such as majority-of-the-minority shareholder approval or a go-shop period to consider alternative bids.

Through this Application, Petitioners seek discovery (the "**Requested Discovery**") from Respondents, each of whom participated in or provided advice in connection with the Merger, highly relevant to the issues in the Appraisal Proceeding, including analyses of the Company's valuation and the process through which the Merger was enacted.

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with proceedings before foreign tribunals.  As the Third Circuit has explained, "Consistent with the statute's modest prima facie elements and Congress' goal of providing equitable and efficacious discovery procedures, district courts should treat relevant

discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *See In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Each Respondent "resides or is found" in this District because they are incorporated in Delaware; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from "nonparticipants" in the foreign action. *Id.* Respondents are not parties to the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Islands courts. As recognized in *Intel*, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782(a) aid." *Id.* This is a sufficient basis for the Court to hold that the first factor is satisfied.

*Second*, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all support granting Petitioner's Application. *Id.* There is no indication, let alone the required "authoritative proof," suggesting that the Cayman Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, several U.S. courts, including a court in this District, have granted Section 1782 applications for discovery in aid of appraisal proceedings in the Cayman Islands. As established in the declaration of Petitioners' Cayman

Islands counsel, Rocco Cecere, Cayman Islands courts have expressly allowed litigants to seek documents through Section 1782.

*Third*, the Application is not an improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Id.* The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the Requested Discovery is not unduly intrusive or burdensome. *Id.* To the contrary, the subpoenas are narrowly tailored to seek evidence and information directly relevant to the critical issues in the Appraisal Proceeding, including documents related to the Merger process and the Company's valuation.

*Finally*, the Court should exercise its discretion to order production of any responsive discovery that Respondents have in their possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third party not subject to the jurisdiction of the foreign court.

## FACTUAL BACKGROUND

### A.    Parties to the Appraisal Proceeding and the Merger.

Petitioners are members of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding. *See* Cecere Decl. ¶ 7.

The Company is a Cayman Islands exempted company headquartered in Fort Mill, South Carolina. Cecere Decl. Ex. M (the "**Proxy Statement**") at 1. The Company produces hygiene and cleaning products. *Id.* Before the Merger, the Company's stock was publicly traded on the NASDAQ under the symbol "DSEY." *Id.* The Company's controlling shareholder was the Bain Shareholder, an entity advised by Bain Capital Private Equity, LP that owned 73% of the Company's shares.

Discussions of a merger between the Company and Solenis, another specialty chemical company, initially began in July 2021, when representatives of Platinum (of which Solenis is a portfolio company) and the Bain Shareholder began to have informal discussions relating to a possible business combination of the entities.  *Id.* at 18.

Several months later, on August 3, 2022, the Company received a nonbinding indication of interest from Platinum and Solenis setting forth their interest in pursuing a take-private acquisition of the Company and a subsequent combination of the Company with Solenis at a price of $11.00 per ordinary share.  *Id.* at 18.

The parties then began a due diligence process, and on September 26, 2022, Platinum informed the Company's board that it and Solenis would be unable to proceed with the transaction on the terms contemplated by the August 3 letter in light of, among other things, downward pressure on the Company's trading price, but that they would continue the diligence process.  *Id.* The parties restarted discussions around a potential business combination in December 2022, and on January 11, 2023, the Company received an updated proposal from Platinum and Solenis setting forth revised terms for a take-private acquisition of the Company and subsequent combination of the Company and Solenis at $7.50 per ordinary share—a reduction of more than 30% from the August 3 proposal.  *Id.* at 20.  The January 11 letter contemplated that the Bain Shareholder would rollover a portion of the ordinary shares owned by it into a combined entity and indicated that the Bain Shareholder would be expected to execute a voting agreement in connection with the proposed transaction.  *Id.*  Because the Bain Shareholder is a majority owner of the Company's outstanding ordinary shares and held sufficient voting power to meet the two-thirds threshold requirement to approve a transaction under Cayman Islands law, an agreement to vote in favor of

the proposed transaction with the Bain Shareholder would result in a majority of shares voting in favor of the proposed transaction.

On January 14, 2023, the board formed a five-member Special Committee to assess and negotiate the merger proposals. *Id.* On January 21, 2023, the Special Committee selected Evercore as its financial advisor. *Id.* at 21. On February 1, 2023, Evercore presented its preliminary financial analysis to the Special Committee. *Id.* at 21–22. The next day, the Special Committee instructed Evercore to make a counterproposal of at least $10.20 per ordinary share with (i) a non-waivable condition that a majority of the minority shareholders approve the transaction ("**MoM Protection**") and (ii) an ability of the minority shareholders to receive cash consideration or contribute ordinary shares to the surviving entity on the same terms as the Bain Shareholder (the "**Public Rollover Option**"). *Id.* at 22. In formulating its proposal, Evercore considered, among other factors (i) higher transaction multiples in the hygiene/cleaning sectors than represented by Platinum's and Solenis's offer of $7.50 per ordinary share; (ii) the potential easing of both challenging market headwinds and raw material cost increases that affected the Company's financial performance in that moment; and (iii) trading multiples for peer companies were at relatively low levels compared with historical averages. *Id.* Platinum and Solenis had seized on these convergent factors to present an opportunistically low bid.

On February 7, 2023, Platinum delivered a counterproposal of $7.75 per ordinary share, only $0.25 higher than the previous bid, with no MoM Protection or Public Rollover Option. *Id.* The Special Committee rejected this proposal, and it determined that, for the benefit of the minority shareholders, a transaction would need to include at least one of a Public Rollover Option, MoM Protection, or cash consideration significantly higher than $7.75 per ordinary share. *Id.* However, Platinum's next proposal on February 14, 2023 did not contain either the Public Rollover Option

or MoM Protection, and it offered only $7.90 per ordinary share—less than a 2% increase from its previous offer.  *Id.*  After more negotiations, on March 4, 2023, the Special Committee determined to provisionally accept an offer of only $8.40 per ordinary share for the minority shareholders, with no Public Rollover Option or MoM Protection.  *Id.* at 26.  Despite just weeks earlier recommending a price of at least $10.00 per ordinary share in addition to the Public Rollover Option *and* MoM Protection, on March 7, 2023, Evercore rendered an oral opinion to the Special Committee that $8.40 per ordinary share with *neither* of these protections was fair to the minority shareholders.  *Id.*  Later that day, the Special Committee recommended that the board approve the merger agreement, and on March 8, 2023, the parties executed the merger agreement.  *Id.* at 27.

Despite these critical flaws, among others, the Company issued a proxy statement on May 15, 2023, that recommended that the minority shareholders vote in favor of the Merger.  *Id.*  Listing the Special Committee's reasons for this recommendation, the Proxy Statement includes "recent market volatility related to the macroeconomic headwinds facing the Company" and "the current and historical market prices of the Ordinary Shares," contradicting Evercore's prior analysis that cited these as reasons why the proposals were undervalued.  *Compare id.* at 28 *with id.* at 22. Regardless, approval was a *fait accompli* as the Bain Shareholder, who held approximately 73% of the outstanding shares, had already executed the voting agreement in which it agreed "irrevocably and unconditionally" to vote its shares in favor of the Merger, thereby satisfying the two-thirds threshold requirement necessary to pass a resolution under Cayman Islands law.  *Id.* at C-2, 29.  The Company held an extraordinary general meeting on June 8, 2023 to vote on the proposal and, as expected, the Merger was approved.  Cecere Decl. Ex. N (Diversey Holdings Ltd. (Form 8-K) (June 8, 2023)).  On July 5, 2023, the Merger completed and the Company was delisted from the NASDAQ.  Cecere Decl. ¶ 21.

**B.    The Appraisal Proceeding.**

On August 23, 2023, Petitioners and other dissenting shareholders initiated a proceeding before the Cayman Court under Section 238 of the Companies Act of the Cayman Islands ("Section 238"), asking the Cayman Court to determine the fair value of their former shares in the Company. Petitioners and the other dissenting shareholders will have the opportunity to present, *inter alia*, documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Cayman Court. In determining the fair value of the dissenting shareholders' former shareholdings, the Cayman Court will examine both the fundamental and intrinsic valuation of the Company, as well as potential market-based measures such as the Merger price itself. Accordingly, the Cayman Court will analyze the fairness of the process that led to the Special Committee's and the Company's approval of the Merger. *See* Cecere Decl. ¶¶ 32–34.

**C.    Respondents and the Discovery Sought.**

      **1.    Solenis**

According to the Proxy Statement, Solenis "is a leading global producer of specialty chemicals focused on delivering sustainable solutions for water-intensive industries." Proxy Statement at 1. Solenis, along with its parent Platinum (discussed below), was the buyer in the Merger. The Merger was undertaken for perceived strategic benefits from a combination between Solenis and Diversey. *Id.* at 18. As the buyer, Solenis participated extensively in the Merger negotiations. *See id.* at 18–27. Solenis is incorporated in Delaware and has its headquarters in Wilmington, Delaware. Barday Decl. Ex. 13.

      **2.    Platinum**

Platinum is a large private equity firm and the parent of Solenis. Along with Solenis, it was the buyer in the Merger. After Platinum acquired Solenis on July 6, 2021, it approached the Bain Shareholder about the strategic benefits of a potential combination between Solenis and

Diversey.  Proxy Statement at 18.  Then, as the buyer, Platinum participated extensively in the Merger negotiations.  *See id.* at 18–27.  Platinum is incorporated in Delaware.  Barday Decl. Ex. 12.

       3.     <u>Bain Shareholder and Bain Capital Private Equity, LP</u>

The Bain Shareholder was the Company's controlling shareholder, holding approximately 73.0% of the ordinary shares prior to the Merger.  Proxy Statement at 2–3, 14.  The Bain Shareholder is an entity advised by Bain Capital Private Equity, LP.  *Id.*  The Bain Shareholder was involved in the initial conversations proposing the Merger and it participated extensively in the Merger negotiations.  *Id.* at 18–27.  Both the Bain Shareholder and Bain Capital Private Equity, LP are incorporated in Delaware.  Barday Decl. Exs. 8 & 9.

       4.     <u>Evercore</u>

Evercore is an investment bank that was retained as the financial advisor to the Special Committee.  Proxy Statement at 4.  In that role, Evercore participated in the Merger negotiations and analyzed the various proposals.  *Id.* at 21–27.  Evercore also issued a fairness opinion approving the Merger.  *Id.* at Annex G.  Evercore is incorporated in Delaware.  Barday Decl. Ex. 14.

       5.     <u>J.P. Morgan</u>

J.P. Morgan is an investment management company that was retained as the financial advisor to the Company.  Proxy Statement at 19.  J.P. Morgan analyzed Company financial information, including the Company management's projections, and was extensively involved in the negotiations.  *Id.* at 21–27.  J.P. Morgan is incorporated in Delaware.  Barday Decl. Ex. 11.

       6.     <u>Centerview</u>

Centerview is an investment bank that was retained as an additional financial advisor to the Company.  Proxy Statement at 21.  In that role, Centerview analyzed Company financial

information, including the Company management's projections, and participated in due diligence sessions. *Id.* at 21–22. Centerview is incorporated in Delaware. Barday Decl. Ex. 10.

       7.    <u>The Discovery Sought</u>

Petitioners' Application seeks discovery from Respondents on issues relevant to the Appraisal Proceeding, including: (i) the fairness of the August 3 price and the final Merger Price; (ii) the rationale for the Special Committee and Evercore to approve the reduced Merger Price with no minority shareholder protections; (iii) the process that led the Special Committee and the Company to consider, negotiate, and approve the Merger; (iv) the independence of the Special Committee; and (v) documents relevant to the fair value of the shares in the Company. The Cayman Court will accept and consider any evidence submitted by the parties, so long as it is relevant and not otherwise subject to an exclusionary rule of evidence. Cecere Decl. ¶¶ 32, 44. This Requested Discovery will accordingly assist the parties and the valuation experts as well as the Cayman Court in evaluating the Merger and determining the fair value of Petitioners' former shares in the Company. *Id.* ¶¶ 52–54.

## **ARGUMENT**

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *See In re EWE Gasspeicher GmbH*, 2020 WL 1272612, at *1 (D. Del. Mar. 17, 2020). If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors. *See Intel*, 542 U.S. at 264–65. "Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district

courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *Bayer*, 146 F.3d at 195.

## I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.

Petitioners satisfy the three threshold statutory requirements of Section 1782.

### A.    Respondents "Reside" or Are "Found in" This District.

Section 1782's statutory element that an entity "reside or be found" in a district is satisfied when an entity is incorporated in the district. *In re Application of Gilead Pharmasset LLC*, No. 14–mc–243 (GMS), 2015 WL 1903957, at *2 (D. Del. Apr. 14, 2015) ("found in" element satisfied when Respondent "is incorporated under the laws of Delaware, and is therefore within the jurisdictional reach of this court"). Each Respondent is incorporated in Delaware. Barday Decl., Exs. 8-14. The first statutory element is thus satisfied here.

That evidence may be located abroad does not change the analysis. *See, e.g.*, *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019) (exercising discretion to permit discovery of evidence located abroad). So long as the documents are within the possession, custody, or control of the respondent, they are discoverable under Section 1782. In a prior case from this District, Chief Judge Connolly considered a Section 1782 application seeking evidence for use in a Japanese appraisal case from Bank of America. *See In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021). Bank of America argued that the first statutory element was not satisfied "because the requested documents 'reside—if anywhere—in Japan with BofA Securities,'" its Japanese subsidiary. Judge Connolly rejected that argument, reasoning that "BofA Securities is not the target of the subpoena. Liverpool seeks to serve the subpoena on [Bank of America], not BofA Securities; and [Bank of America] is a Delaware corporation and therefore it resides and is found in this District.

Accordingly, the first condition of § 1782 is satisfied here." *Id.* The court went on to hold that "To be clear, and so there is no doubt about how to interpret this Memorandum Order, because BAC is a Delaware corporation and the parent of BofA Securities, documents that 'reside' with BofA Securities are nonetheless in BAC's possession, custody, and control." *Id.*

**B. The Discovery Sought Is "For Use" in the Appraisal Proceeding.**

To establish that the information sought is "for use" in a foreign proceeding, Petitioners must merely show that they have "the procedural right to submit the requested documents to" the foreign tribunal. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). Petitioners need not show that the Cayman Court will determine that the documents are admissible or even relevant. For example, in a prior case from this District, a respondent to a Section 1782 application argued that the evidence sought would not be useful to an Italian court because the requested documents were not relevant to the ultimate issues in that proceeding. *In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782*, No. 20-MC-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021), *recons. Den.* Judge Noreika rejected that argument, reasoning that "Respondents therefore speculate as to the admissibility and usefulness of the evidence Eni seeks. Section 1782, however, does not require the district court to conduct such a speculative inquiry. The Third Circuit has stated that 'it would contradict the express purpose of section 1782 if the American court were required to predict the actions of another country's tribunal.'" *Id.* (quoting *Bayer*, 146 F.3d at 192). The court held that "Respondents' arguments about the ultimate admissibility and relevance of Respondents' documents do not show that the requested discovery would not be 'for use' in the Italian proceedings under § 1782." *Id.*

As explained by Petitioners' Cayman Islands counsel, the Requested Discovery may be submitted in the Appraisal Proceeding. Cecere Decl. at ¶¶ 45-51 (explaining that discovery obtained through Section 1782 may be submitted in Cayman Islands appraisal proceedings).

### C.    Petitioners Are "Interested Persons."

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 256 (S.D.N.Y. 2011) ("No doubt litigants are included among the interested persons who may invoke § 1782." (quoting *Intel*, 542 U.S. at 256)).  Because Petitioners are parties to the Appraisal Proceeding, Cecere Decl. ¶ 7, they are "interested persons."  All of the statutory elements are thus satisfied here.

## II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery.  To do this, the district court looks to the four "*Intel* factors."  *See Intel*, 542 U.S. at 264; *see also Mees v. Buiter,* 793 F.3d 291, 298 (2d Cir. 2015).  Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### A.    Respondents Are Non-Participants in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  Respondents are not parties in the Appraisal Proceeding and therefore will not be subject to party discovery in the Appraisal Proceeding.  Cecere Decl. ¶ 36.

Further, because Respondents are not Cayman Islands companies, the Cayman Court will not have jurisdiction to compel discovery from them.  *Id*.  Petitioners, therefore, will not be able to take discovery of Respondents through the Appraisal Proceeding, even though that evidence

may be crucial to the issues in that proceeding.  *Id.* ¶ 41 ("Therefore, absent assistance from this Honorable Court, which I understand has jurisdiction over Respondents, the Petitioners will not have a way to compel any discovery directly from Respondents in a timely manner.").

Accordingly, this first *Intel* factor weighs in favor of granting the Application.

**B.    The Cayman Court Will Be Receptive to the Evidence Sought.**

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance.  "As the party opposing discovery, Respondents bear the burden of persuading the Court that the foreign tribunals would not consider the discovery sought under § 1782."  *In re Eni S.p.A.*, 2021 WL 1063390, at *4.  "The inquiry under this *Intel* factor is not whether particular evidence would be admissible in a foreign court, but whether the foreign tribunal is generally receptive to U.S. federal-court judicial assistance."  *Id.*; *see also In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016); *In re Gilead Pharmasset LLC*, No. 14-mc-243 (GMS), 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) ("Furthermore, the foreign tribunals have not been shown to be unreceptive to evidence obtained as a result of this application simply because the Entitlement Proceedings may place 'little evidentiary value' on deposition discovery.").

The Cayman Court will consider any evidence that has a bearing on determining the fair value of a company's shares.  *See* Cecere Decl. ¶ 30.  Indeed, the Cayman Islands Court of Appeal ("**CICA**," whose decisions are binding on the Cayman Court, *see id.* ¶ 4) has underscored that third-party materials are relevant in Section 238 proceedings, reasoning:

> [I]f third party valuations in the possession of the company are relevant, so are third party valuations not in the possession of the company . . . . After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the company (or for the company as a whole): and that question is closely related to valuations conducted within the market generally.

*Id.* Ex. C (*Re Qunar Cayman Islands Ltd.* (2018 1 CILR 199 at ¶ 60)). This includes discovery obtained under Section 1782, including pre-trial deposition testimony, which the CICA has explicitly held "is a right conferred by US law—it is not a right conferred by, or to be withheld under, Cayman law." *Id.* Ex. E (*Lyxor Asset Mgmt. S.A. v. Phoenix Meridian Equity Ltd.,* 2009 CILR 553, 575 (Sept. 24, 2009)). Accordingly, the Cayman Court has made procedural orders in Cayman Islands appraisal proceedings that acknowledge and accommodate discovery obtained through Section 1782. Cecere Decl. ¶ 44. Further, multiple U.S. courts have recognized that Cayman Islands courts are receptive to evidence obtained through Section 1782,[1] including a court in this District, which granted discovery for use in a different Cayman Islands appraisal proceeding. *See In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) (Barday Decl. Ex. 15).[2]

### C.    Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

---

[1] *See also In re Kuwait Ports Auth.*, 2021 WL 5909999, at *10 (S.D.N.Y. Dec. 13, 2021) ("The record contains no clear and express directive under Cayman law or policy that would demonstrate a lack of receptivity to judicial assistance from federal courts in the United States."); *In re Hopkins*, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought from [respondent]."); *In re Dickson*, 2020 WL 550271, at *2 (S.D.N.Y. Feb. 4, 2020); *In re Platinum Partners Value Arbitrage Fund L.P.*, 582 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman Islands' courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding Cayman Court "is open to receiving § 1782 discovery").

[2] Two other district courts also recently granted Section 1782 applications for both document discovery and a deposition for use in different Cayman appraisal proceedings. *See In re Application of Athos Asia Event Driver Master Fund*, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) (same).

States." *Intel*, 542 U.S. at 265.  Because "relevant evidence is presumptively discoverable under § 1782," the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought.  *Bayer*, 146 F.3d at 196.  In addition, there is no "quasi-exhaustion requirement," *i.e.*, a requirement that petitioner first seek the discovery in a foreign court.  *Bayer*, 146 F.3d at 196 ("A 'quasi-exhaustion requirement' of the kind advocated by [the respondent] on appeal has been rejected by those courts that have addressed it."); *In re O'Keeffe*, No. 14-cv-5835 (WJM), 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015), *aff'd*, 2015 WL 5039723 (D.N.J. Aug. 26, 2015), *aff'd*, 646 Fed. Appx. 263 (3d Cir. 2016) ("We have never held that an applicant must seek discovery relief in the foreign forum first.").

The discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands.  To the contrary, as the Cecere Declaration explains, "Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. Accordingly, there is no requirement to obtain permission from the [Cayman Court] before seeking relevant evidence abroad, including through Section 1782 applications."  Cecere Decl. ¶ 42. Rather than circumventing any Cayman Islands proof-gathering restriction, Petitioners' Application seeks to assist the Cayman Court's determination of the fair value of the dissenting shareholders' former shareholdings.  *Id.* ¶¶ 26–34.

### D.    The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  *See Bayer* , 146 F.3d at 195 ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").

*First*, Petitioners only seek evidence that is relevant to the issues in the Appraisal Proceeding, namely, evidence related to the Merger and the Company's valuation. Petitioners' Cayman Islands counsel confirms that the discovery sought by Petitioners is relevant to the key issues in the Appraisal Proceeding and "will be used by and will assist the experts retained by the Dissenting Shareholders (including the Petitioners) and the Company, as well as the Grand Court itself, to determine the fair value of the Company's shares." Cecere Decl. ¶ 52.

*Second*, the discovery requests are temporally limited from May 1, 2021 to July 5, 2023.

*Third*, a deposition is not unduly burdensome here. Courts in this Circuit routinely grant depositions of third parties under Section 1782. *See, e.g.*, *In re O'Keeffe*, 646 F. App'x 263, 265 (3d Cir. 2016); *In re Request from Cayman Islands*, No. 22-mc-00536-RGA, ECF No. 6 (Order) (D. Del. Jan. 12, 2023); *In re Application of Gilead Pharmasset LLC*, No. CV 14-MC-243 (GMS), 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015) ("The scope of Gilead's application is not unduly intrusive because the requested documents, and deposition topics, pertain to the issue of inventorship raised in the Entitlement Proceedings."); *In re Third Eye Cap. Corp.*, No. CV 22-963 (MAH), 2022 WL 714758, at *1 (D.N.J. Mar. 10, 2022); *Matter of HES (Caribbean) Int'l Holdings, S.R.L.*, No. CV20506CCCESK, 2020 WL 728892, at *1 (D.N.J. Feb. 13, 2020); *In re Ex Parte Application of Sandoz Canada, Inc.*, No. CV2002425MASDEA, 2020 WL 5642189, at *4 (D.N.J. Sept. 22, 2020) ("The deposition topics and documents requested in the proposed subpoena appear to be narrowly tailored to the subject matter of the patent disputes now pending in the Federal Court of Canada.").

*Finally*, if the Court has remaining concerns about undue burden, Petitioners are willing to meet and confer with Respondents to address those concerns. If the Court finds merit to any objections from Respondents on scope, "it is far preferable for a district court to reconcile whatever

misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995). The Third Circuit has held, in considering the fourth *Intel* factor, that it would be "erroneous to turn down [the petitioner's] discovery request flat without requiring [the respondent] to negotiate with [the petitioner] over cutting down the request." *In re Biomet Orthopaedics Switzerland GmbH*, 742 F. App'x 690, 699 (3d Cir. 2018) (citing *Euromepa*, 51 F.3d at 1101) (cleaned up).

## **CONCLUSION**

Petitioners respectfully request that the Court grant their Application.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

OF COUNSEL:
Duane L. Loft
Shireen A. Barday                    */s/ Jamie L. Brown*
John McAdams                         Jamie L. Brown (# 5551)
PALLAS PARTNERS (US) LLP             300 Delaware Avenue, Suite 200
75 Rockefeller Plaza                 Wilmington, DE 19801
New York, NY 10019                   (302) 472-7300
(212) 970-2300                       jbrown@hegh.law
duane.loft@pallasllp.com             *Counsel for Petitioners*
shireen.barday@pallasllp.com
john.mcadams@pallasllp.com

Dated: November 2, 2023

17